Duracraft Corporation *v.* Holmes Products Corporation.

DURACRAFT CORPORATION *vs.* HOLMES PRODUCTS CORPORATION & another.[1]

No. 96-P-1203.

Suffolk. November 19, 1996. - May 7, 1997.

Present: DREBEN, GILLERMAN, & PORADA, JJ.

Further appellate review granted, 425 Mass. 1105 (1997).

*Statute,* Construction. *"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government. *Words,* "Matters of public concern."

Discussion of the legislative history of G. L. c. 231, § 59H, added by St. 1994, c. 283, § 1, the anti-SLAPP statute. [576-579]

There is no requirement in G. L. c. 231, § 59H, the anti-SLAPP statute, that the protected activity must involve a matter of public concern. [579-580]

In a civil action asserting a legitimate, cognizable claim based on a pre-existing valid contract arising out of earlier litigation between the same parties initiated by one defendant, the defendants were not entitled to dismissal of the complaint pursuant to G. L. c. 231, § 59H, the anti-SLAPP statute, on the ground that the statute protected the defendant's prior exercise of its right of petition. [580-583]

CIVIL ACTION commenced in the Superior Court Department on March 21, 1996.

Special motions to dismiss were heard by *Margaret R. Hinkle,* J.

An application for leave to appeal was allowed in the Appeals Court by *Lenk,* J., and the appeal was reported to a full panel of the Appeals Court by her.

*Dustin F. Hecker* for Holmes Products Corporation.

*Richard J. Yurko* for Francis E. Marino.

*Edward J. Dailey* for the plaintiff.

GILLERMAN, J. A judge of the Superior Court denied the defendants' special motions to dismiss under G. L. c. 231, § 59H, added by St. 1994, c. 283, § 1, commonly referred to

[1]Francis E. Marino.

as the anti-SLAPP[2] statute (statute), the material provisions of which we set out in the margin.[3] Thereafter, a single justice of this court granted leave to appeal the judge's ruling to a full panel of this court. The appeal raises, for the first time, issues regarding the scope and application of the statute.[4] Certain material facts that provide the background for this controversy are undisputed. From 1987 to July, 1990, the defendant Marino was employed as an engineer for the defendant Holmes Products Corporation (Holmes). In July, 1990, Marino left Holmes to work for the plaintiff Duracraft Corporation (Duracraft), where he was employed until August, 1994. From August, 1994, to 1995, Marino was employed by a third company, Accutek. In December, 1995, Marino returned to Holmes, where he is currently employed.

---

[2]"SLAPP" is an acronym for "Strategic Litigation Against Public Participation." The acronym was coined by Professors Penelope Canaan and George Pring of the University of Denver. See Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3, 4 (1989).

[3]General Laws c. 231, § 59H, applies "[i]n any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth." In such cases the statute provides that the party against whom such an action is commenced may bring a special motion to dismiss. The statute defines "a party's exercise of its right of petition" as:

> "[1] any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; [5] or any other statement falling within constitutional protection of the right to petition government."

Once the moving party "asserts" that the statute applies, the court "shall grant" the motion unless the non-moving party shows that: "(1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party."

[4]The only prior reported appellate decision of which we are aware is *Vittands* v. *Sudduth*, 41 Mass. App. Ct. 515 (1996), a case which decides the issue of the effective date of G. L. c. 231, § 59H.

Shortly after joining Duracraft in 1990, Marino entered into a "Nondisclosure and Non-Competition Agreement" (Agreement) in which he agreed not to disclose any confidential information to third parties. The Agreement also contained a provision stating that Marino is not precluded from disclosing confidential information "upon the lawful demand of any governmental agency (including court process)." Upon such a lawful demand, Duracraft was to have the opportunity to review and comment on the confidential information sought, and to discuss with Marino and the agency the scope and content of the requested information.

In 1992, while Marino was working for Duracraft, Holmes commenced an opposition proceeding against Duracraft before the Federal Trademark Trial and Appeal Board (TTAB), alleging that Duracraft had improperly registered the word "turbo" as a trademark. In November, 1995, Holmes noticed Marino's deposition in the TTAB proceeding. Marino was then working for Accutek. The deposition was postponed, re-noticed in January of 1996, and taken on February 7, 1996, by which time Marino was again employed by Holmes. Present at the deposition were four attorneys for Holmes, two attorneys for Duracraft, and Marino.

Duracraft, in an unverified complaint filed in March, 1996, alleges that during Marino's deposition, counsel for Holmes elicited, and Marino disclosed, confidential information concerning the "turbo" trademark litigation and related intellectual property matters. Duracraft also alleges that Marino met with attorneys for Holmes prior to the deposition and offered to provide such deposition testimony. The claims against Marino and Holmes are for breach of contract, breach of fiduciary duty, intentional interference with contractual relations, misappropriation of trade secrets, unfair competition, and unfair and deceptive acts and practices. Holmes and Marino then moved to dismiss these claims under the statute.

The judge, relying on what she reasonably perceived to be the objective of anti-SLAPP statutes enacted in other jurisdictions, viz., "to protect citizens from lawsuits designed to silence their opposition concerning a matter of public concern," as well as the public reports of House floor debates, ruled that the mischief the statute was designed to remedy were "incidents involving citizens sued for speaking out on issues of *public* concern" (emphasis in original). Applying that standard, the judge found that Marino's testimony during his deposition was not protected by the statute because a

trademark dispute is not a matter of public concern. Although acknowledging that "[o]n its face, the language of the statute would appear broad enough to apply here," the judge held that the statute was not applicable to this case. To construe the statute as being applicable would, the judge wrote, "substantially alter procedural and substantive law," which a judge should not do "[a]bsent a clear legislative intent to abrogate the existing law." The judge denied the special motion.

1. *Matters of public concern.* We look first to the words of the statute to determine whether, as Duracraft argues, the statute is confined to claims against persons exercising their right of petition in a matter of public concern. "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the court is to enforce it according to its terms." *Massachusetts Community College Council* v. *Labor Relations Commn.*, 402 Mass. 352, 354 (1988). See also Singer, Sutherland Statutory Construction § 46.01, at 81 (5th ed. 1992), quoting from *Caminetti* v. *United States*, 242 U.S. 470, 485 (1917).

The statute grants to any party against whom a claim is brought by reason of that party's exercise of his "right of petition under the constitution of the United States or of the commonwealth," the right to file a special motion to dismiss the claim.[5] The "right of petition" referred to in the statute is the right protected by the First Amendment to the Constitution of the United States ("Congress shall make no law . . . abridging the . . . right of the people . . . to petition the Government for a redress of grievances"),[6] and by the Declaration of Rights.[7]

---

[5]The motion is new to Massachusetts. The statute directs that the court "shall grant" the special motion unless the plaintiff (the non-moving party) shows that the defendant's alleged petitioning activities have no basis in law or fact, and the plaintiff has been caused damages by reason of such activities. In this formulation, the merits of the plaintiff's claim are not relevant.

[6]For an extensive account of the history of the right of petition protected by the First Amendment to the United States Constitution, see Smith, "Shall Make No Law Abridging . . .": An Analysis of the Neglected, But Nearly Absolute, Right of Petition, 54 U. Cin. L. Rev. 1153, 1154-1183 (1986).

[7]Article 19 of the Declaration of Rights states the right of the people to petition the "legislative body" for the redress of "wrongs done them, and of

The statute makes explicit that the protected right of petition extends to five kinds of statements. See note 3, *supra.* Statements [1], [2] and [3] do not necessarily involve issues of public concern or public participation in the consideration of an issue. Statement [4] does contemplate public participation designed to affect the consideration of an issue. Statement [5] is a catch-all which brings in any statement not previously mentioned and which falls within the constitutional protection of the right of petition.[8] Nowhere does the statute state that the special motion to dismiss is available only where the covered statements are those involving issues of public concern.[9]

The focus of Duracraft's argument is that, aside from the

---

the grievances they suffer." The defendants' petitioning activity, not being addressed to the "legislative body," states no claim under art. 19.

[8]Marino and Holmes argue that the statements made by them opposing Duracraft's registration of the trademark "turbo" in the federal trademark proceedings may fall within statements [1] and [2] of the statute. The claims asserted against Marino were based on Marino's testimony during his deposition in the TTAB proceeding, and therefore appear to be statements "made before . . . a . . . judicial body . . . ." The statements also appear to have been "made in connection with an issue under consideration or review by a . . . judicial body . . . ." While TTAB is an administrative agency, it "acts in a judicial capacity" in hearing and resolving disputes before it, and its decisions may be given preclusive effect. See *EZ Loader Boat Trailers, Inc.* v. *Cox Trailers, Inc.*, 746 F.2d 375, 377-378 (7th Cir. 1984). In any event "the [Federal] right of petition extends to all departments of the Government." *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U.S. 508, 510 (1972).

[9]Duracraft does not argue that Federal constitutional protection of petitioning activity does not extend to private statements and grievances such as are involved in this controversy. It is unlikely that such an argument would succeed. While the United States Supreme Court has not spoken directly to the issue, the availability of protection for petitioning activity involving private grievances is implicit in *Bill Johnson's Restaurants, Inc.* v. *National Labor Relations Bd.*, 461 U.S. 731, 741, 743 (1983) (NLRB's order to terminate plaintiff's state court action filed in response to allegedly unlawful union activity reversed. "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances . . . . The First Amendment interests [are] involved in private litigation . . . ." See *McDonald* v. *Smith*, 472 U.S. 479, 484 (1985) ("filing a complaint in court is a form of petitioning activity" unless the complaint is "baseless litigation"); *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U.S. at 510 ("The right of access to the

words of the statute, the *purpose* of the statute is self-evident. Like similar statutes elsewhere, the Duracraft argument runs, the Massachusetts statute is intended only to protect people who speak out on matters of public concern.

It is true that similar statutes passed elsewhere reveal a general legislative purpose to protect activity designed to affect or influence governmental action regarding issues arguably of public concern or significance.[10] And it is at least arguable that the controversy in this case does not involve speaking out, or taking any other action, regarding an issue of public concern or significance. Yet the principal point remains: the Massachusetts statute is silent as to any requirement that the action to be protected must, to qualify for that protection, involve an issue of public concern.

---

courts is indeed but one aspect of the right of petition").

Duracraft's principal argument is limited to the issue of the interpretation of § 59H (suggesting, it would seem, that § 59H is less broad than the constitutional right of petition). Thus, our discussion is on the premise, not disputed by Duracraft, that the Federal constitutional right of petition does not exclude the protection claimed by the defendants in this case.

[10]In California, the statute protects each person who has acted "in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." Cal. Civ. Proc. Code § 425.16 (West Supp. 1997). The Delaware statute is available only when a person "has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body." Del. Code Ann. tit. 10, § 8136 (Supp. 1996). The statute in Minnesota protects "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." Minn. Stat. Ann. § 554.01 (West Supp. 1997). The statute in Nevada protects a person "who in good faith communicates a complaint or information to a legislator, officer or employee of this state . . . or . . . of the Federal Government, regarding a matter reasonably of concern to the respective governmental entity . . . ." Nev. Rev. Stat. § 41.650 (1995). The statute in New York protects efforts "to report on, comment on, rule on, challenge or oppose" the action of "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from a government body . . . ." N.Y. Civ. Rights Law §§ 70-a, 76-a (McKinney Supp. 1997). The statute in Rhode Island protects "[a] party's exercise of his or her right of petition or of free speech under the United States or Rhode Island Constitutions in connection with a matter of public concern . . . [including] "(e) . . . any written or oral statement made in connection with an issue of public concern." R.I. Gen. Laws § 9-33-2 (Supp. 1996). The statute in Washington protects any good faith communication with any federal, state, or local government agency "regarding any matter reasonably of concern to that agency . . . ." Wash. Rev. Code § 4.24.510 (1994).

Duracraft's argument overlooks the fact that the Massachusetts statute is fundamentally different from the anti-SLAPP statutes passed in other jurisdictions; that is to say, the legislative history of the Massachusetts statute reveals an intentional omission of any requirement that the defendant's conduct arise in connection with an issue of public concern. See *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne,* 14 Mass. App. Ct. 76, 81 (1982) (legislative history may decide disputes regarding the interpretation of a statute).[11]

The bill was originally introduced on January 7, 1993, as House No. 3033. It was captioned, "An Act Limiting Strategic Litigation Against Public Participation." Section 1 of the bill inserted § 59H, the first sentence of which reads as follows: "In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's lawful exercise of its right of petition or of free speech under the constitution of the United States or of the commonwealth [*sic*] *in connection with a matter of public concern,* said party may bring a special motion to dismiss" (emphasis added).

On December 7, 1993, the House changed the title of the bill to read, "An Act Protecting the Public's Right to Petition Government." On December 21, 1993, the bill was amended in the Senate by *striking* from the first paragraph of § 59H (following a reference to a party's "lawful exercise of its right of petition") the phrase "in connection with a matter of public concern," and by *striking* from the definition of "a party's exercise of its right of petition or of free speech," the phrase "or any written or oral statement made in connection with an issue of public concern."[12] See Journal of the Senate, Tuesday, December 21, 1993.

On December 30, 1993, the House approved the amendments adopted in the Senate. The bill as amended was passed by both chambers on January 3, 1994. The Governor vetoed the legislation on January 14, 1994. House No. 3033, as

_____

[11]As noted in the *Hunters Brook Realty Corp.* case, 14 Mass. App. Ct. at 81 n.7, "It would have advanced consideration of this case substantially, both here and below, if . . . [both] parties had investigated and briefed the applicable legislative history."

[12]Other changes, not material to this controversy, were made in the Senate on December 21, 1993.

amended in the Senate, was reintroduced as House No. 1520[13] and eventually passed, over a second veto by the Governor, in December of 1994. See Legislative Record, 85H-86H (1994).

Given the legislative history just recited, there is no basis for this court to reinsert the rejected condition that the moving party's activity must involve a matter of public concern. Singer, Sutherland Statutory Construction § 47.38, at 290-291 (5th ed. 1992). *King* v. *Viscoloid Co.,* 219 Mass. 420, 425 (1914) ("we have no right to . . . read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose"). *Bronstein* v. *Prudential Ins. Co.,* 390 Mass. 701, 706 (1984) (reiterating the language just quoted from *King*). *Callahan* v. *A.J. Welch Equip. Corp.,* 36 Mass. App. Ct. 608, 611-612 (1994). Compare *Cranberry Realty & Mortgage Co.* v. *Ackerley Communications,* 17 Mass. App. Ct. 255, 257 (1983). We conclude that the statute imposes no condition that the defendants' statements involve issues of public concern.[14] See *Bratcher* v. *Galusha,* 417 Mass. 28, 30-31 (1994) (we may not "rewrite or ignore the plain language of the stat-

---

[13]The preamble to House No. 1520 states that the "Legislature finds and declares that full participation by persons and organizations and robust discussion of issues before legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process . . . ." The earlier House No. 3033 had inserted the words "of public concern" immediately after the words "discussion of issues." Both House No. 3033 and House No. 1520 conclude with a reference to "citizens who have participated in matters of public concern."

In this case, where we conclude that the enacting part of the statute, seen in the light of its legislative history, is plain, we attach no interpretive significance to the content of the preamble. See *Brennan* v. *The Governor,* 405 Mass. 390, 395-396 (1989) ("Statements regarding the scope or purpose of an act that appear in its preamble may aid the construction of doubtful clauses, but they cannot control the plain provisions of the statute"); Singer, Sutherland Statutory Construction § 47.04, at 146-147 (5th ed. 1992) ("[T]he settled principle of law is that the preamble cannot control the enacting part of the statute in cases where the enacting part is expressed in clear, unambiguous terms").

[14]Given the legislative history of § 59H, we attach no importance — as Duracraft would have us do — to public statements attributed to the principal proponent of the legislation in the House. Those statements purport to identify the concern of the Legislature: "a person or group who has expressed an opinion on a matter of public concern."

ute. [We also may not] intrude on the Legislature's function or . . . disregard the plain meaning of the statute").

It does not follow, however, that the defendants must prevail on their special motion to dismiss.[15]

2. *The immunity issue.* Following arguments in this case, we asked the parties to file supplementary briefs on the question set out in the margin.[16] In response, Holmes and Marino argue that the statute created a qualified immunity from all "civil claims, counterclaims and cross-claims" based on their exercise of their right of petition.[17] The qualification is that Duracraft may defeat the immunity by demonstrating, in its pleadings, affidavits and discovery specially permitted by the judge, see § 59H, par. third, that the defendants' claimed exercise of the right of petition is "devoid of any reasonable factual support or any arguable basis in law," and that the exercise caused the plaintiff actual injury. The defendants state accurately that Duracraft made no such showing in the Superior Court.[18] The result, say the defendants, is that Duracraft's claims are merely "civil claims" barred by operation of

---

[15]The elimination from § 59H of any requirement that the petitioning activities involve "issues of public concern" had the effect of broadening the statute as compared to the original draft in House No. 3033. Section 59H as it now stands is as extensive as the full reach of the petitioning clause of the First Amendment.

[16]"Assuming, *arguendo*, that the availability of c. 231, § 59H, is not limited to issues of public concern, to what extent, if at all, does the defendants' assertion of the right of petition under § 59H defeat, as matter of law, the plaintiff's asserted claims arising from its pre-existing confidentiality agreement with the defendant Marino?"

[17]The defendants' immunity argument is based on the so-called *Noerr-Pennington* doctrine. That doctrine grew from two Supreme Court cases, *Eastern R.R. Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers* v. *Pennington*, 381 U.S. 657 (1965). "The essence of the doctrine is that parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." *Video Intl. Prod., Inc.* v. *Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988). Exceptions to the doctrine have to do with sham petitioning activities. See note 19, *infra*.

[18]While the judge permitted limited discovery (i.e., the depositions of Marino and the president of Duracraft), the record appendix does not include evidence of that work, if there was any. The record appendix does include various affidavits, but none was filed in opposition to the defendants' special motion to dismiss.

§ 59H, and their special motion to dismiss should have been allowed. We do not agree.

If we take the language of the statute literally, it might be said that the legislative intention was to immunize non-sham petitioning activity[19] from *all* claims based on such activities. See note 5, *supra*. Such a construction would create grave constitutional problems where, as here, the plaintiff's action asserts a legitimate, cognizable claim based on a pre-existing contract between the parties. See *1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge*, 424 Mass. 661, 663 (1997) ("It is fundamental that issues of statutory interpretation should be resolved prior to reaching any constitutional issue"). The plaintiff, after all, is simply exercising its right of petition. *Bill Johnson's Restaurants, Inc.* v. *National Labor Relations Bd.*, 461 U.S. at 744-747, while not entirely congruent with this case, is nevertheless instructive. In that case, as we describe in note 9, *supra*, the defendant commenced a State court action in response to allegedly unlawful union activity. The National Labor Relations Board (Board), finding the action an unfair labor practice, ordered the defendant to withdraw the action, and the Court of Appeals enforced the Board's order. The Supreme Court reversed the judgment of the Court of Appeals and remanded the case to the Board for further proceedings. The Court reasoned, see *id.* at 745-746, that if there is a genuine issue of material fact in the state court action, the action cannot be enjoined by the Board. "When a suit presents genuine factual issues, the state plaintiff's First Amendment interest in petitioning the state court for redress of his grievance . . . lead[s] us to construe the [National Labor Relations] Act as not permitting the Board to usurp the traditional fact-finding function of the state-court jury or judge. Hence we conclude that if a state plaintiff is able to present to the Board with evidence that shows his lawsuit raises genuine issues of material fact, the Board should proceed no further . . . until the state-court suit has been concluded." *Ibid*.

Similarly, we conclude that § 59H must be construed to recognize Duracraft's First Amendment right of petition by

---

[19]It is settled law that petitioning activity which is nothing more than "baseless litigation" is not protected by the First Amendment. See *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993).

permitting it to litigate its claims based on its non-disclosure agreement with Marino.[20] Stated differently, § 59H cannot be constitutionally construed to mean that non-sham petitioning activities immunizes the defendant from all Federal and State statutory and common law causes of action based on the defendant's petitioning activities.[21] What is at issue here is the individualized petitioning right of Duracraft to seek enforcement of an alleged violation of its pre-existing agreement with Marino. While this area of the law is far from settled, we have found no case, and none has been brought to our attention, holding that a defendant's non-sham petitioning activity is immunized from a plaintiff's petitioning right to seek enforcement of alleged violations of a valid pre-existing contract between the parties. Compare *Whelan* v. *Abell*, 48 F.3d 1247 (D.C. Cir. 1995), where the Court of Appeals was faced with a similar problem: the conflict between the right of petition and a common law tort. The court concluded, "We see no reason to believe that the right of petition includes a right to file deliberately false complaints." *Id.* at 1254. See *Florida Fern Growers Assn., Inc.* v. *Concerned Citizens of Putnam County, Inc.* 616 So. 2d 562, 570 (Fla. 1993) (petitioning activities do not provide immunity from claims of malicious interference with advantageous relationship). But see *Video Intl. Prod. Inc.* v. *Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (the *Noerr-Pennington* doctrine has been "expanded . . . to protect first amendment petitioning of the government from claims brought under federal and state laws, including section 1983 and common-

---

[20]We reject the defendants' argument that a judge *must* allow their special motion where the plaintiff fails to make any showing in response to the defendants' special motion. It is true, as the defendants emphasize, that the statute provides that the court "shall grant . . . [the] special motion" unless a showing is made by the plaintiff. "However, the word 'shall' as used in statutes . . . is not of inflexible signification and not infrequently is construed as permissive or directory in order to effectuate a legislative purpose." *Myers* v. *Commonwealth*, 363 Mass. 843, 846 (1973). See Black's Law Dictionary 1375 (6th ed. 1990) (shall "may be construed as merely permissive or directory [as equivalent to 'may'], to carry out the legislative intention . . .").

[21]Whether, or the extent to which, that assumption may be valid in cases involving petitioning activities which *also* implicate First Amendment guarantees of freedom of speech or association, see *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U.S. at 510-511, we need not consider, for no such rights of the defendants are involved in this case.

law tortious interference with contractual relations"); *Suburban Restoration Co.* v. *ACMAT Corp.*, 700 F.2d 98, 102 (2d Cir. 1983) (non-sham petitioning activities immunized defendants from alleged violations of State statute regulating unfair trade practices and common law claims of tortious interference with a business expectancy); *Webb* v. *Fury*, 167 W.Va. 434, 448 (1981) (the *Noerr-Pennington* doctrine "bars litigation arising from injuries received as a consequence of First Amendment petitioning activity, regardless of the underlying cause of action asserted by the plaintiffs").[22]

To sum up, § 59H, although not limited to matters of public concern, must be construed, for constitutional reasons, not to preclude Duracraft's action alleging a violation of its pre-existing agreement of confidentiality.

Accordingly, we affirm the judge's denial of the defendants' special motion to dismiss.[23]

*So ordered.*

[22]Finally, Duracraft argues that Marino and Holmes are not "legitimate petitioners" and that they do not meet the threshold requirement for application of the statute. Both contentions rest on the same foundation: TTAB ruled that Holmes's deposition of Marino, its own employee, was not appropriate. "A party cannot take discovery of itself. . . ."

The TTAB decision, however, did not rule that Marino's deposition was not a statement made in connection with an issue being considered before them. The TTAB ruling merely limited the use of Marino's deposition, specifically noting that the deposition may still be used for impeachment purposes. The use of depositions in civil cases is generally so limited. See Mass. R.Civ.P.32(a)(1), 365 Mass. 787 (1974). Deposition testimony is, in our view, a statement made in connection with a judicial proceeding regardless of how the deposition itself is ultimately used. Compare *Wilcox* v. *Superior Court*, 27 Cal. App. 4th 809, 821-822 (1994) (memorandum sent to fellow court reporters notifying them of the plaintiff's lawsuit, and seeking their support, held to be statement in connection with the underlying judicial proceeding); *Dove Audio, Inc.* v. *Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996) (letter seeking endorsements for complaint to the State Attorney General found to be a statement made in connection with an official proceeding and covered by the anti-SLAPP statute). There is no merit to this argument.

[23]Duracraft's complaint alleges claims sounding in tort as well as contract. The tort claims appear to depend upon the validity of the contract claim. If the contract claim fails, the remaining counts may fail with it. If the contract claim survives, the parties will be required to consider whether, on the authorities cited in the text, the tort claims are entitled to survive Duracraft's petitioning rights.