Tierney, J.
INTRODUCTION
This matter is before the court on the defendant in counterclaims’ Special Motion to Dismiss filed pursuant to G.L.c. 231, §59H. For the reasons set forth below the Special Motion to Dismiss is ALLOWED as to Counts I and II, and DENIED as to Count III. The request for declaratory relief is STAYED pending resolution of the underlying claim.
BACKGROUND
The plaintiff-in-counterclaim Charles Tringale (“Tringale”) is a developer and builder engaged in building and selling new homes on a twenty-nine lot site at the Sea Heights residential subdivision in Plymouth. Tringale purchased seven undeveloped lots in the subdivision at a foreclosure sale in February 1994. The Defendants-in-counterclaim are Sea Heights Resident Association (“Association”) and five members of the association named individually — Robert Grieve, Scott West, Bemie Hennessey, Dean Merlin, and Carl Stahleker (‘The Individuals”). The Association is a nonprofit corporation vested with the authority to supervise and administer the affairs of Sea Heights. The individual defendants are residents of the Sea Heights development. On February 7, 1997, the Association instituted the underlying action against Tringale claiming that Tringale commenced construction of two single family homes on lots 29-23 and 29-24 without complying with the terms and conditions of the Development’s Declaration of Protective Covenants (“Covenants”).[1] These covenants provide, inter alia, no “structure ... or other approvement. . . shall be created, placed, maintained, altered or used on any property until the complete plans, including landscape plans, specifications, and proposed location of any building or structure have been submitted to and improved in writing, by the Association." The Association alleges Tringale failed to pay dues and assessments on his present and former lots and failed to obtain approval for the work done.
Tringale alleges in 1994, prior to building, the Association reviewed the proposed building plans and gave verbal approval to construct the homes. Consequently, three houses were constructed and sold without incident on lots 29-18, 29-25, and 29-13. The current controversy arose when Tringale constructed the houses at lots 29-23 and 29-24. Tringale maintains the individual association members were unhappy with the size and value of these houses and demanded that he “(b]uild out attached garages . . . [e]rect 12’X14’ decks; and [add] an additional [$]2,000 [of] landscaping per lot.” Tringale alleges, the individuals represented they would withhold final completion certificates until their demands were met.
Tringale counterclaimed against the Association and added five present or former officers of the Association in their individual capacities. The claims against the individuals assert malicious abuse of process, malicious interference with an advantageous business relationship and civil conspiracy. Tringale further seeks a declaratory judgment for issuance of certificates of compliance for the two houses constructed on lots 29-23 and 29-24. The Association and individuals now move to dismiss all Tringale’s counterclaims pursuant to G.L.c. 231, §59H.
SPECIAL NOTION TO DISMISS
1. Applicability of the Act
The Association and individuals have moved to dismiss all counterclaims pursuant to G.L.c. 231, §59H, the Anti-SLAPP Statute, (“Act”).[2] The Massachusetts legislature enacted this Act to limit expensive litigation that chills a party’s right to speak or petition the government. The right to petition includes “any written . . . statement. . . submitted to a . . . judicial body” such as a complaint. While the statute does not provide which party bears the initial burden of proving the applicability of the Act, this court has consistently held “the party seeking to benefit from the Act must make this initial showing.” Margolis v. Gosselin, 5 Mass. L. Rptr. No. 13, 283 (Smith, J., 1996); MFP, Inc. v. Martin, (Suffolk Superior Court, Civil Action NG. 94-6433) (King, J., 1996). Once the moving party has met its initial burden, the burden then shifts to the responding party to prove both that the moving party’s actions: (1) were devoid of any reasonable factual support or any arguable basis in law, and (2) caused actual injury to the opposing party. If the opposing party fails to fulfill either of these two prongs, the court will grant the moving party’s special motion to dismiss.
In Duracraft Corp. v. Holmes Products, 42 Mass.App.Ct. 572 (1997), the Appeals Court examined for the first time the scope and application of the Act. The Appeals Court concluded the Act can be used to protect “petitioning” activities that do not themselves involve matters of overall public concern. Id.
The Association and individuals contend that Tringale brought the counterclaims against them and added the individuals on account of their exercise of their right to petition. They further maintain that the exercise of their rights is not devoid of any arguable basis in law and that Tringale has suffered no actual injury.
Tringale maintains the Act has no applicability to this case and cites Milford Power Ltd. Partnership v. New England Power, 918 F.Sup. 471 (D.Mass 1996), as support for this proposition. In Milford, an electric power producer sued a wholesale electric utility, alleging various causes of action. The federal court wrestled with the applicability of the statute in regard to Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), concerns and declined to apply the Act based on the specific facts of the case. Nonetheless, the court noted the new Act’s broad definition of the right to petition. Id. at 488-89.
*360 The initial determination for this court is whether the Act applies. Although the Appeals Court does not delineate the scope of the Act in Duracraft, it clearly does not limit the Act to any particular fact pattern and seems to mandate an expansive reading of the right to petition government. The Association, through the actions of the individuals, initiated suit against Tringale alleging breach of the covenants. This clearly falls within the constitutional right to petition. Accordingly, this court finds the Association’s actions through the consensus of the individuals constitute the exercise of the right to petition and fall within the purview of the Act.
2. Standing of the Individuals
Tringale further argues that the individuals have no standing, based on the wording of the Act, to bring this Special Motion to Dismiss. The Act provides, in relevant part, that: “in any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party’s exercise of its right of petition under the constitution of the United States or of the Commonwealth, said party may bring a special motion to dismiss.” Section 59H of the Act broadly defines the right to petition. It states, “a party’s exercise of its right of petition” includes:"
any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.
The petitioning activity here is the Association’s decision to file suit alleging breach of the restrictive covenants. Tringale maintains that the Association as the only party who petitioned the court is the only party who has any basis to invoke the Act. However, it is clear that the individuals as members of the Residents Association were involved in the initiation of the lawsuit and were an integral part of the petitioning activity. The Association could not have acted on its own without the action of the individuals. Accordingly, I hold that the individuals have standing to bring this Special Motion to Dismiss.
3. Counts 1 and 2 — Malicious Abuse of Process and Malicious Interference with Advantageous Business Relations
The Association and Individuals maintain that Tringale’s counterclaims are precisely the type the Act was designed to prevent and should be dismissed because they “have been sued for exercising their right to petition.” Tringale argues to the contrary that this litigation does not qualify for protection under the Act.
It is apparent from the wording of Counts 1 and 2 that Tringale is not asserting claims based on activity independent from the petitioning activity. In Count 1 (Malicious Abuse of Process) and Count 2 (Malicious Interference with Advantageous Business Relations) Tringale alleges that the individuals “in an illegal attempt to gain leverage over Tringale . . . filed a frivolous action with the court.” As these claims, by their very nature, stem from the petitioning activity of the individuals through their Association the Act applies. See Office One, Inc. v. Carlos Lopez, 7 Mass. L. Rptr. No. 10, 219 (9/15/97) (Cowin, J.) (Duracraft “should be interpreted as barring application of the Act only when the claim being asserted by the plaintiff is based on activity independent from the petitioning activity of the defendants”). In sum, the gravamen of the Tringale’s counterclaim in Counts 1 and 2 is that Association and individuals filed a frivolous lawsuit in an attempt to force him to comply with their demands. Tringale is complaining about the filing of the lawsuit and is not asserting a legally cognizable claim. Tringale has no independent preexisting claim upon which to base Counts 1 and 2 of his counterclaims. See Duracraft at 583.
Having determined that the Act applies, and that the individuals and the Association have standing, this court must next determine whether Tringale has sustained the statutory burden to defeat the Special Motion to Dismiss. In ruling on a Special Motion, this court must consider the pleadings as well as supporting and opposing affidavits stating the facts upon which the liability or defense is based. G.L.c. 231 §59H. Tringale’s counterclaims for malicious abuse of process and malicious interference with an advantageous business relationship arise out of the Association’s petitioning activity in seeking to enforce the Covenants. It is apparent that Tringale has no independent preexisting claim upon which to base Counts 1 and 2 of the counterclaim. See Duracraft Corp. v. Holmes Products, supra at 583.
Tringale fails to withstand the Special Motion to Dismiss by showing the Association’s petitioning activity was devoid of any reasonable factual support or any arguable basis in law. The Association and Individuals have filed sufficient affidavits with the court to establish a genuine controversy exists regarding the terms and conditions of the restrictive covenants and Tringale’s representations to the residents. Furthermore, Tringale has failed to make any specific claims of injury. Instead, Tringale alleges a general and unsubstantiated claim of economic injury. In any event, this court’s finding that Tringale has failed to show that the Association’s claims are without reasonable factual support and sound basis in law render a determination of actual injury unnecessary.
*361 The Special Motion to Dismiss is allowed as to Counts I and II.
4. Civil Conspiracy
In Count III of Tringale’s counterclaim, Tringale alleges the Association and the individuals engaged in civil conspiracy and attempted to coerce Tringale into landscaping and building certain improvements onto the houses. Although the Association and individuals assert that Tringale counterclaimed against them for civil conspiracy based on their right to petition, the Act is not applicable to this count. Tringale seeks redress for alleged statements made and actions performed, outside the context of petitioning. It is clear that oral or written statements made or submitted in relation to the petitioning activiiy do fall within the Act’s protection. However, the allegations of Civil Conspiracy, arise from the alleged representations made by the individuals prior to initiation of the lawsuit and do not hinge on the petitioning activity of the Association. Consequently, because Tringale alleges conduct which does not constitute the exercise of the right to petition as defined by the Act, the Special Motion to Dismiss is denied as to Count 3 — Civil Conspiracy.
ORDER
For the foregoing reasons it is hereby ORDERED that Sea Heights Resident Association and the Individual- Defendants-in-Counterclaim Special Motion to Dismiss Tringale’s counterclaims is ALLOWED as to Counts I and II and DENIED as to Count III. The request for declaratory relief is STAYED pending resolution of the underlying claim.

Recorded in Book 8749, Page 265 in Plymouth County Registry of Deeds. The Covenants were imposed in 1988 as part of a common scheme by the then owner of all the lots in the subdivision. The Association succeeded to these rights, duties and obligations to enforce the covenants.

SLAPP stands for Strategic Litigation against Public Participation.