Cowin, J.
INTRODUCTION
Plaintiffs Office One, Inc. and Pilgrim Telephone, Inc. have filed numerous tort and contract claims against the various defendants arising out of Office One’s purchase from the Federal Deposit Insurance Corporation of several commercial units in the River Court Condominium in East Cambridge, Massachusetts. This matter is before the court on special motions by each of the defendants to dismiss the complaint pursuant to G.L.c. 231, §59H. Also before the Court is a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6) by defendants V. Douglas Errico and Marcus, Goodman, Emmer & Brooks, P.C.
For the reasons discussed below, the special motion to dismiss of defendants Jacqueline S. Sullivan, Bryan Chegwidden, Nicholas Porcaro, Lynn H. Moore, James E. Gado and Jill Herold, Individually and as Trustees of the River Court Condominium Trust is ALLOWED in part and DENIED in part. In addition, the special motion to dismiss of defendants V. Douglas Errico and Marcus, Goodman, Emmer & Brooks, P.C.’s is ALLOWED in part and DENIED in part. Defendants James and Joan Stanley’s special motion to dismiss pursuant to G.L.c. 231, §59H is ALLOWED. In addition, defendants Thomas and Linda Sansone’s special motion to dismiss is ALLOWED. Finally, V. Douglas Errico and Marcus, Goodman, Emmer & Brooks, P.C.’s motion to dismiss pursuant to Rule 12(b)(6) is ALLOWED in part and DENIED in part.
BACKGROUND
For the purposes of the present motions to dismiss, the following allegations from the amended complaint and affidavits of the parties are accepted as true. The River Court Condominium (River Court) is a luxury condominium located at 10 Rogers Street in East Cambridge and comprised of 166 residential units, 8 retail/commercial units and an underground parking garage. Use of the commercial units and parking spaces is governed by Special Permit #55 (the Special Permit) issued by the Cambridge Planning Board on September 1,6, 1986, and by the River Court Master Deed (Master Deed) dated February 21, 1989. The Special Permit provides among other things that no more than 15 parking spaces in River Court may be allocated to commercial uses, that the commercial uses on the ground floor shall service the needs of residents and that the health club will be a private facility for use by residents.
Since 1995, the Federal Deposit Insurance Corporation (FDIC) has held title to several commercial units and numerous parking spaces at River Court which it hoped to sell. On May 15, 1995, defendant Lynn Moore, who is a member of the Board of Trustees of the River Court Condominium (the Board), submitted a bid to the FDIC to purchase five first-floor commercial units (the Units) for $615,000. Ms. Moore submitted this bid in her private capacity as a real estate broker. Moore and the FDIC executed a purchase and sale agreement on June 5, 1996 giving the FDIC until June 12th to accept her clients’ offer.
Plaintiffs Office One, Inc. (Office One) and Pilgrim Telephone, Inc. (Pilgrim) are telecommunications providers. David Silver (Silver), a unit owner and former resident of River Court, is the president of both of these corporations. On May 28, 1996, Silver notified the Board[3] by letter that he had made an offer to purchase the Units and 36 parking spaces at River Court from the FDIC. Silver’s letter stated that his offer to the FDIC was subject to the Board’s agreement to several conditions including that the proposed use of the Units by Pilgrim was consistent with the condominium documents and Special Permit, that Pilgrim’s employees and visitors would have 24-hour access to the parking spaces acquired with the Units, and that *221 Pilgrim’s employees would have use of common areas such as the pool and health club.
On June 11, 1996, Silver and the Trustees met to discuss his proposal. Silver stated that if he purchased the Units, Pilgrim would operate its administrative offices at River Court 24 hours a day, employing between 15 and 25 people per shift. The Trustees informed Silver that they were concerned about the impact of his proposal on building security, overuse of common facilities and parking. In addition, the Trustees told Silver that his proposal to use River Court parking spaces for Pilgrim employees who worked at the company’s headquarters a few blocks away from the condominium was prohibited by the Master Deed.
Meanwhile, between June 7 and June 12, 1996, Moore called the FDIC several times to inquire about the status of her clients’ purchase offer and was informed that the FDIC was considering several other confidential bids. Moore extended the acceptance date of her clients’ bid to June 19th. On June 20th, the FDIC informed Moore that it was calling for best and final offers on the Units to be submitted by June 27, 1996. On July 2, 1996, Moore learned that her clients’ bid had been unsuccessful.
In early July, upon learning that Silver was the successful bidder on the Units, the Trustees consulted City of Cambridge officials regarding the lawful use of River Court and were informed that under the Special Permit no more than 15 parking spaces could be used by commercial tenants. On July 22, 1996, the Trustees held an open meeting to discuss Silver’s imminent purchase of the Units, the closing for which was scheduled on July 29th. Numerous trustees and unit owners expressed concern that Silver’s purchase would displace commercial tenants such as a dry cleaner and deli which provided necessary services to residents, and concerns regarding security and overuse of facilities such as the health club. In addition, some unit owners expressed concerns that Pilgrim would be operating a “telephone sex business” at their residential community. The Trustees informed Silver that their counsel had been instructed to investigate the legal issues presented by his proposed use of the Units and parking spaces. Silver responded that he would consider canceling his purchase of the Units if it could be accomplished without any financial loss to him.
Unit owner James Stanley and his wife Joan (the Stanleys) drafted and distributed to other River Court residents a leaflet opposing the sale of the Units to Silver. The leaflet urged residents of River Court to sign a petition opposing the sale and to contact the FDIC and elected officials such as U.S. Senator John Kerry and U.S. Congressman Joseph Kennedy. The leaflet further contained sample letters which could be sent to Cambridge Mayor Sheila Russell, Cambridge City Councilor Timothy Toomey and State Senator Robert Travaglini.
River Court residents Thomas Sansone and his wife Linda (The Sansones) also opposed the sale of the Units to Silver. Thomas Sansone prepared and posted a document entitled “Urgent Warning Rivercourt [sic] Property Owners” (the notice) on the River Court bulletin board. The notice stated that Pilgrim was a provider of “phone sex services” and urged all unit owners to protest Silver’s acquisition of the Units. Shortly after this notice was posted, it was removed by an unknown party. Thomas Sansone then posted a second “Urgent Warning” notice which he later observed Silver removing from the bulletin board. When confronted by Sansone, Silver stated that he was removing the notice because it was not correct, but declined to list which statements therein were inaccurate.
On July 24th and 25th, counsel for the Trustees, V. Douglas Errico (Errico) and his firm, Marcus, Goodman, Emmer & Brooks, P.C. (condominium counsel), sought assistance from Congressman Joseph Kennedy’s office in persuading the FDIC to rescind the purchase and sale agreement with Silver and reopen the bidding. Kim Brauer, River Court’s Building Manager, sent petitions signed by unit owners to the FDIC, Governor Weld and U.S. Senators Edward Kennedy and John Kerry. OnJuly29,1996, Errico learned from Congressman Kennedy’s office that the closing on the sale of the Units to Silver had been postponed for two weeks. Silver’s counsel, however, sent a letter to the FDIC demanding that the closing take place as scheduled. Thus, on August 1, 1996, Errico learned that the closing had occurred. Office One, which became the record owner of the Units, leased Unit 120 and nine of the parking spaces to Pilgrim.
The Trustees sent a memo to all unit owners advising them that the Board would continue to investigate the legality of Silver’s proposed use of the Units and parking spaces. Thereafter, on August 15, 1996, the Trustees’ zoning counsel, James Rafferty of Adams & Rafferty, wrote to Robert Bersani, the Commissioner of the Inspectional Services Department of the City of Cambridge (Commissioner Bersani), concerning the fact that as owner of Unit 120, Office One intended to use 36 parking spaces for commercial use. Rafferty requested that Commissioner Bersani enforce the Special Permit which mandated that no more than 15 parking spaces be allocated to commercial use. Commissioner Bersani replied that enforcement regarding Unit 120 would be premature, but requested further information about which businesses were authorized to use the 15 commercial parking spaces in the garage. In September, the Trustees discovered that one of Silver’s employees who worked at an off-site location was using the River Court parking garage in violation of the Master Deed. Accordingly, after giving Silver notice, the Board conducted a hearing on the alleged parking violations on October 22, 1996. The Board concluded that Pilgrim and its employee had violated *222 the Master Deed but offered to waive fines or other enforcement action if Silver conformed to the parking restrictions in the future.
Meanwhile, on October 18, 1996, Commissioner Bersani notified the Trustees that as many as 36 parking spaces were being used for commercial purposes at River Court in violation of the Special Permit, and ordered them to reduce the number of commercial spaces to 15 within 21 days. The Trustees then adopted a new regulation allocating the 15 commercial parking spaces to River Court’s commercial tenants on the basis of date of purchase.
Thereafter, on December 11, 1996, Office One and Pilgrim filed the present action. On February 12, 1997, this Court (Connolly, J.) allowed the plaintiffs to amend their verified complaint. Count I of the amended complaint alleges interference with advantageous business relations against Moore. Count II claims slander, defamation and trade libel against the Sansones and Stanleys and other individuals of the Committee to Protect River Court “whose identities are presently unknown to Plaintiffs.” Count III alleges interference with contractual relations against Errico, the Trustees, the Sansones and the Stanleys. Count IV seeks a declaratory judgment concerning the validity of the Amendment to the Rules and Regulations of River Court adopted by the Trustees and the proper application of the Special Permit and Master Deed to the controversy between the plaintiffs and Trustees concerning parking spaces. Count V alleges breach of fiduciary duty against the Trustees, while Count VI claims that Errico and condominium counsel aided and abetted the Trustees’ wrongful actions. Count VII alleges a civil conspiracy among the Trustees, Errico and condominium counsel with respect to the enforcement decision of the Building Commissioner concerning the use of a parking space in River Court by an off-site Pilgrim employee. Finally, Count VIII claims a violation of Chapter 93A by the Trustees, Moore, Errico and condominium counsel.
DISCUSSION
I. SPECIAL MOTIONS TO DISMISS PURSUANT TO G.L.c. 231, §59H
The Trustees, the Sansones, the Stanleys, and Errico and condominium counsel have each filed special motions to dismiss the amended complaint pursuant to Chapter 231, Section 59H, the “anti-SLAPP”[4] Act. This Act provides a remedy to individuals who have been sued for exercising their right of petition, providing a quick dismissal of such suits and the recovery of attorneys fees and costs. Vittands v. Sudduth, supra; Duracraft Corp. v. Holmes Product Corp., 42 Mass.App.Ct. 572, 574 (1997). The Act provides that a party may bring a special motion to dismiss in any action in which it asserts that the civil claims, counterclaims or cross claims against it are based on its “exercise of the right of petition under the Constitution of the United States or of the Commonwealth.” G.L.c. 231, §59H (1994). Said statute defines the right of petition as:
any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.
A recent appellate decision has clarified that a moving party’s petitioning activity need not involve an issue of public concern in order for the anti-SLAPP Act to apply. Duracraft Corp. v. Holmes Products Corp., 42 Mass.App.Ct. 572, 576-79 (1997).[5] Thus, for example, a special motion to dismiss is available in a trademark dispute between private parties. Id.
A party seeking dismissal under §59H bears the initial burden of demonstrating that the claims against that party arise from the exercise of the right of petition. Margolis v. Gosselin, Civil No. 9503837 (Middlesex Super. Ct. May 22, 1996), 5 Mass. L. Rptr. No. 13, 284 (July 1, 1996) (Smith, J.); Andover Liquors, Inc. v. Den Rock Liquors, Inc., Civil No. 960032C (Essex Super. Ct. May 1996), 5 Mass. L. Rptr. No. 11, 239 (June 17, 1996) (Whitehead, J.). Once the movant establishes that the anti-SLAPP statute applies, the burden shifts to the nonmoving party to show both that the moving party’s exercise of the right to petition was devoid of any reasonable factual support or any equitable basis in law, and that the moving party’s acts caused actual injury to the responding party. See G.L.c. 231, §59H; Vittands v. Sudduth, supra at 518-19. If the party against whom the special motion is brought fails to fulfill either of these two requirements, the court must grant the special motion to dismiss. MFP, Inc. v. Martin, Civil No. 94-5433 (Suffolk Super. Ct. Feb. 2, 1996) (King, J.). In ruling on a special motion, the court must consider the pleadings as well as supporting and opposing affidavits stating the facts upon which the liability or defense is based. G.L.c. 231, §59H.
Office One and Pilgrim contend that the recent Appeals Court decision in Duracraft Corp. v. Holmes Products Corp., supra, requires this Court to deny the defendants’ special motions to dismiss in the present case.[6] In Duracraft, defendant Francis Marino was employed as an engineer for defendant Holmes from 1987 until July 1990, when he began working for the plaintiff Duracraft. Id. at 573. Marino returned to Holmes’ employ in December 1995. Id. Shortly after joining Duracraft, Marino had entered into a “Nondis *223 closure and Non-Competition Agreement” in which he agreed not to disclose any confidential information to third parties. Id. at 574. The agreement provided that Marino was not precluded from disclosing such information upon a lawful demand of any government agency including court process, but that upon such a demand, Duracraft would have the opportunity to review and comment on the confidential information sought and to discuss with Marino and the agency the scope and content of the requested information. Id.
In 1992, while Marino was working for Duracraft, Holmes commenced a proceeding against Duracraft before the Federal Trademark Trial and Appeal Board (TTAB), alleging that Duracraft had improperly registered the word “turbo” as a trademark. Id. Marino was deposed in the TTAB proceeding in February of 1996. The following month, Duracraft filed an action against Marino and Holmes for breach of contract, interference with contractual relations, breach of fiduciary duty, misappropriation of trade secrets and unfair trade practices, alleging that Marino had disclosed confidential information during his deposition testimony in violation of the agreement with Duracraft. Id. Holmes and Marino then moved to dismiss these claims under the anti-SLAPP Act, alleging that they were based on Marino’s right of petition; i.e., his statements in the TTAB proceeding. Id.
The Appeals Court held that Duracraft’s claims against Marino and Holmes were not subject to dismissal under G.L.c. 231, §59H because to interpret the anti-SLAPP Act as immunizing non-sham petitioning activity from all claims based on such activities would “create grave constitutional problems where, as here, the plaintiffs action asserts a legitimate, cognizable claim based on a pre-existing contract between the parties.” Id. at 581. The Court noted that in filing suit to enforce its confidentiality agreement, Duracraft was exercising its own First Amendment right to petition. Id.
Office One and Pilgrim argue that Duracraft holds that a defendant’s right to petition the government cannot trump a plaintiffs right of petition in filing and pursuing a lawsuit. So interpreted, the Appeals Court’s decision would render the anti-SLAPP Act a nullify, since defendants would no longer be entitled to protection against suits based on their petitioning activity. This Court cannot construe Duracraft to effect so drastic a result. The Appeals Court could not have established a principle which in its application would always cause a special motion to dismiss to be denied, thereby eviscerating the statute. Rather, Duracraft stands for the proposition that a legitimate cause of action brought to vindicate rights independent of the right to petition may not be dismissed under the anti-SLAPP Act. The Appeals Court thus drew a distinction between legally cognizable claims brought for a legitimate purpose which must be constitutionally allowed, and noncognizable claims, brought for the ulterior purpose of interfering with defendants’ constitutional right to petition, which should be dismissed under c. 231, §59H.
In refusing to dismiss Duracraft’s claims, the Court emphasized that:
What is at issue here is the individualized petitioning right of Duracraft to seek enforcement of an alleged violation of its preexisting agreement with Marino . . . §59H, although not limited to matters of public concern, must be construed, for constitutional reasons, not to preclude Duracraft’s action alleging a violation of its preexisting agreement of confidentiality. Duracraft Corp. v. Holmes Products Corp., supra at 582-83.
Thus, the Court refused to apply the anti-SLAPP Act when its application would have permitted the individual defendant to breach, with impunity, an express confidentiality agreement into which he had validly and voluntarily entered. Such a result would not only implicate Duracraft’s right to petition the court by filing a lawsuit to enforce its agreement, but would also render meaningless its right of contract. Accordingly, Duracraft is limited to its facts[7] and does not mandate the denial of the defendants’ special motions to dismiss in the present case.[8] It is thus necessary to consider the defendants’ assertions that the amended complaint must be dismissed pursuant to G.L.c. 231, §59H.
A. Count I: Interference with Advantageous Business Relations
The crux of Count I of the amended complaint for interference with advantageous business relations is that “after discovering that Silver had submitted the highest and best offer, Moore and/or her agents intentionally, wilfully and maliciously intervened with the FDIC, as Receiver, and persuaded the FDIC, as Receiver, to reopen the bidding for the FDIC units.” The Trustees contend that these communications by Moore with the FDIC were statements made to or in connection with an issue under consideration or review by an executive body or governmental proceeding, and are therefore protected by the anti-SLAPP Act. However, Office One and Pilgrim contend that the sale of the Units was merely a private liquidation of property by the FDIC acting as Receiver of the Bank of New England, N.A. and the Connecticut Bank and Trust, defunct private banks, and, as such, did not involve a legislative, executive or judicial body or other governmental proceeding.[9] In support of this assertion, Office One and Pilgrim note that the FDIC as receiver acts principally to protect private parties, insured depositors,[10] and that its sale of the Units was not subject to any public comment period, a public hearing, or any further governmental review.
The FDIC’s broader legislative mandate, however, is to promote the stability of the banking system by protecting depositors and creditors of the failed bank *224 and the public generally. See D’Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942); FDIC v. Grella, 553 F.2d 258, 262 (2d Cir. 1977); FDIC v. Raffa, 935 F.Sup. 119, 123 (D.Conn. 1995); FDIC v. Isham, 782 F.Sup. 524, 531 (D.Colo. 1992). The FDIC was appointed as Receiver of the Bank of New England by the Comptroller of the Currency, an executive officer within the Treasury Department, and was therefore acting as an agent of the executive branch in selling the Units.[11]
Further, the lack of a public comment period and/or public hearing in connection with the FDIC sale of the Units is not dispositive as to its status as a governmental body that may be petitioned, given that the FDIC must adhere to legislative standards in performing its duties as receiver. For example, the FDIC must “fully consider the adverse economic impact on local communities, including businesses and farms, of actions to be taken by it during the administration and liquidation of loans of a depository institution in default. 12 U.S.C. §1821(h)(1).[12]
Despite the lack of a mechanism for formal public participation in the FDIC’s liquidation activities, members of the public may attempt to influence the FDIC’s conduct as a governmental body and the FDIC is entitled to reject a high bid for the reasons relevant here. To the extent that it considers these factors, the defendants may attempt to influence the FDIC’s decision and try to enlist allies in doing so.
Finally, in the Duracraft opinion, the Appeals Court found that the anti-SLAPP Act was implicated by statements made to the Federal Trademark Trial and Appeal Board (TTAB), an administrative agency which sometimes acts as a judicial body, noting that the federal right of petition extends to all departments of the government. Duracraft Corp. v. Holmes Products Corp., supra at 576, n. 8. Thus, Duracraft requires an expansive reading of the right to petition the government.
Accordingly, I conclude that Moore’s communications to the FDIC concerning the manner in which it was conducting the sale of the Units constituted the exercise of the right of petition and fall within the purview of the anti-SLAPP Act. Thus, Count I must be dismissed unless Office One and Pilgrim have shown that Moore’s exercise of her right to petition was devoid of any reasonable factual support or basis in law and that such exercise caused them actual injury. Clearly, Moore had a reasonable factual basis for her communications with the FDIC; she was already engaged in good faith negotiations to purchase the Units on behalf of her clients. Her entitlement to petition the FDIC and seek allies to strengthen her effort exists notwithstanding the fact that she was doing so purely for economic self-interest. See Margolis v. Gosselin, supra (holding that the anti-SLAPP Act applies to a suit brought by a supermarket developer against a public relations firm hired by a competing grocery chain to create neighborhood opposition to a proposed commercial development for the purpose of minimizing competition); Dunkin’ Donuts, Inc. v. Honey Dew Associates, Inc., Civil No. 923170 (Suffolk Super. Ct. Jan. 10, 1996) (Donovan, J.) (holding that the anti-SLAPP Act applies to a suit by Dunkin Donuts against another donut franchisor, Honey Dew, which appeared before the Zoning Board to oppose the development of a competing donut shop very close to an existing Honey Dew shop). Accordingly, because Office One and Pilgrim have failed to sustain their burden under the anti-SLAPP Act, the Trustees’ special motion to dismiss Count I of the amended complaint is allowed.[13]
B. Count II: Slander, Defamation & Trade Libel
Count II of the amended complaint álleges slander, defamation and trade libel against the Stanleys and Sansones based on “statements to various Unit Owners and others concerning the nature of Pilgrim Telephone’s business. Copies of some of the correspondence generated by Defendants [sic] and addressed and circulated among Unit Owners in River Court are attached hereto as Exhibit C.” The correspondence attached as Exhibit C is the “Urgent Warning” memo posted by Thomas Sansone and the leaflet distributed by the Stanleys. Count II alleges that the defamatory statements were made “for the sole purpose of injuring Pilgrim Telephone’s business and reputation and to bring pressure upon Office One not to purchase the FDIC Units.”
The parties agreed at oral argument that in light of the Duracraft decision, the fact that the Stanleys and Sansones’ statements did not involve a matter of public concern is irrelevant to the application of the anti-SLAPP Act. See Duracraft Corp. v. Holmes Products Corp., supra at 576-79. Nonetheless, Office One and Pilgrim assert that their defamation claim against the Stanleys and Sansones is based not on those defendants’ communications with the FDIC or elected representatives but rather, on their statements to other unit owners concerning the allegedly sexual nature of Pilgrim’s telephone operations. Thus, they contend that no right of petition was implicated by the Stanleys’ and Sansones’ communications.
The fact that a defendant made communications solely to private parties does not preclude application of the anti-SLAPP Act when those communications are reasonably likely to enlist public participation in an effort to affect the consideration of an issue by a governmental body. See G.L.c. 231, §59H (1994); Thomson v. Andover Board of Appeals, Civil No. 931716 (Essex Super. Ct. July 25, 1995), 4 Mass. L. Rptr. No. 19, 411 (Jan. 1, 1996) (Whitehead, J.) (dismissing claim based on letters written to newspaper involving issuance of special permit); Jordan v. Murray, Civil No. 9401560 (Norfolk Super. Ct. June 29, 1995) (Dortch-Okara, J.) (dismissing claim based on neighbor’s statements to prospective buyers of land). The Stanleys’ and Sansones’ statements concerning *225 the nature of Pilgrim’s business were intended to enlist other unit owners in protesting the sale of the Units to Silver and were part of the larger effort to petition government officials in an effort to affect the FDIC’s consideration of the sale. Thus, the anti-SLAPP Act is applicable to Count II of the amended complaint.
Office One and Pilgrim have failed to show that the Stanleys’ and Sansones’ petition to the FDIC and related statements to other unit owners lack a reasonable factual basis or equitable basis in law. Clearly there is a factual basis for the Stanleys’ assertion in its leaflet that Pilgrim’s operations would change the character of the community by displacing the dry cleaner and deli then servicing the residents of River Court and by increasing the use of River Court facilities.[14] Thus, the Stanleys and Sansones had a reasonable factual basis for their statements that the proposed sale of the Units would intensify the commercial use at River Court and change the character of their residential community. Further, Office One and Pilgrim have failed to show that the Stanleys’ and Sansones’ concerns about the FDIC’s sale of the Units lacked a reasonable basis in law, given the Master Deed and Special Permit restrictions on permissible use of River Court. Accordingly, the Stanleys’ and Sansones’ motion to dismiss Count II of the amended complaint is allowed.[15]
C. Count III: Interference with Contractual Relations
The crux of Count III of the amended complaint for interference with contractual relations is that the various defendants[16] “contacted the FDIC, as Receiver, for the sole purpose of interfering with the sale of the FDIC Units to Office One.” The communications of the Trustees, Errico and Condominium Counsel to the FDIC and other government officials concerning the pending sale of the Units involved statements made in connection with an issue under consideration in a governmental proceeding and were reasonably likely to encourage consideration or review of an issue by the FDIC and by the other elected officials. In addition, as discussed supra, the Stanleys’ and Sansones’ statements were reasonably likely to enlist public participation in an effort to “effect such consideration.” Thus, the anti-SLAPP Act applies to these defendants’ activities.
Office One and Pilgrim have failed to show that the defendants’ exercise of their right of petition was devoid of any reasonable factual basis or basis in law. Silver indicated to the Trustees that he intended to allow off-site employees to park at River Court and use its health club facilities. This raised legitimate issues of concern under the Special Permit and Master Deed for the Trustees, Errico and Condominium Counsel, and unit owners. Accordingly, because the plaintiffs have failed to make the showing required under G.L.c. 231, §59H to defeat a special motion to dismiss, Count III of the amended complaint is to be dismissed as to all defendants.
D. Count IV: Declaratory Judgment
Count IV alleges that the Trustees adopted in bad faith an amendment to the Rules and Regulations of River Court (the Parking Restrictions) for the sole purpose of interfering with Office One and Pilgrim’s lawful use of the property and to cause them economic harm. It further alleges that the Trustees initiated an additional private enforcement action against Office One and Pilgrim based on said Parking Restrictions. Count IV thus seeks a declaratory judgment pursuant to G.L.c. 231A as to the validity and enforceability of the Parking Restrictions.
Office One and Pilgrim contend that this cause of action merely challenges the validity of the Parking Regulations and does not involve any communications the Trustees may have had with the Cambridge Building Commissioner concerning parking at River Court. The Trustees argue, however, that the declaratory judgment claim implicates such communications because the Trustees initially contacted the Building Commissioner with respect to the parking situation at River Court. This led to the Commissioner’s order that no more than 15 spaces be allowed for commercial use and prompted the Trustees to adopt the challenged Parking Regulations which they then sought to enforce against Pilgrim. The Trustees, therefore, contend that Office One and Pilgrim filed Count IV of the amended complaint in retaliation for their communications with the Building Inspector, which communications fall within the right of petition.
The allegations contained in Count IV of Office One and Pilgrim’s original verified complaint support this conclusion. Count IV seeking a declaratory judgment in the original complaint alleged that the Trustees “have without legal basis invoked and initiated zoning enforcement action by the City of Cambridge Building Commissioner and that the Trustees "have relied upon said enforcement action" as a pretext to adopt an Amendment to the Rules and Regulations of River Court for the sole purpose of interfering with Plaintiffs’ lawful use of their property and to cause them economic harm." These allegations reveal that the declaratory judgment claim in the original complaint was indeed based on the Trustees’ right of petition: i.e., their communications with the Building Commissioner.
Nonetheless, Office One and Pilgrim argue that the Court cannot consider the allegations of the original complaint because it has been superseded by the amended complaint and should be treated as void. See Geas v. Dubois, 868 F.Supp, 19, 22 (D.Mass. 1995); Lowden v. Mercer, 903 F.Sup. 212, 216 (D.Mass. 1995). The filing of an amended complaint, however, does not automatically extinguish the original complaint for all purposes. National Construction Co., Inc. v. National Grange Mutual Ins. Co., 10 Mass.App.Ct. *226 38, 40 (1980). The original complaint filed in this action was a verified complaint. General Laws c. 231, §59H directs the court, in ruling on a special motion to dismiss, to consider the pleadings as well as affidavits stating the facts on which the liability or defense is based. A verified complaint is the equivalent of an affidavit. Thus, under the mandate of the anti-SLAPP statute, the court is to consider the contents of the original verified complaint. Taking such into consideration, Count IV is based on the Trustees’ right of petition, and the Trustees’ special motion to dismiss Count IV is therefore allowed.[17]
E.CountV: Breach of Fiduciary Duty
Count V alleges that the Trustees have breached their fiduciary duty to Office One and Pilgrim as unit owners by adopting the Parking Restrictions; deliberately withholding notice of an adverse enforcement decision by the Cambridge Building Commissioner until the period for filing an appeal had expired; interfering with Office One and Pilgrim’s access to the condominium telephone utility closet and denying them storage space; commencing private enforcement actions against Office One and Pilgrim with respect to their use of the parking facilities; and by demanding that a former tenant of Silver’s stop using the condominium health club. Count V for breach of fiduciary duty in the original complaint alleged that the Trustees “sought enforcement action from the City of Cambridge to revoke the Certificate of Occupancy for the use of Unit 120" and "invited enforcement action by the City of Cambridge Building Commissioner against Plaintiffs, which action limited to 15 the number of commercial parking spaces authorized at River Court." These allegations implicate the Trustees’ right to petition government and reveal that Office One and Pilgrim’s motive in bringing Count V was to punish said petitioning activity. Thus, the Trustees have met their burden of demonstrating that the anti-SLAPP Act applies to CountV and their special motion to dismiss is allowed as to Count V.
F.Count VI: Aiding and Abetting
Count VI alleges that Errico and condominium counsel aided and abetted the Trustees’ breach of fiduciary duty by withholding from Office One and Pilgrim notice of an adverse enforcement decision by the Cambridge Building Commissioner until after the period for filing an appeal had expired. Even considering the allegations in the original verified complaint, however, Count VI is not based on Errico’s or condominium counsel’s right of petition to government and is not entitled to the protection of the anti-SLAPP act. Accordingly, the special motion to dismiss is. denied with respect to Count VI.
G.Count VII: Civil Conspiracy
Count VII alleges that the Trustees, Errico and condominium counsel conspired to deprive Office One and Pilgrim of notice of the Cambridge Building Commissioner’s enforcement decision. Count VII of the original complaint for civil conspiracy alleged that “Errico, Condominium Counsel and the Trustees possessed a peculiar power of coercion and have improperly used their status and influence for the improper purpose of persuading the Building Commissioner to institute an enforcement action against Plaintiffs’ property interests.” As discussed above, when the allegations in the amended complaint are reviewed, it is clear that this claim too is based upon communications to government and is therefore entitled to the protection of the anti-SLAPP Act. Thus, Count VII is to be dismissed.
H.Count VIII: Violation of Chapter 93A
Finally, Count VIII alleges that the actions of the Trustees, Moore, Enrico and condominium counsel constitute wilful and knowing violations of Chapter 93A. Given that Office One and Pilgrim have stated a claim for aiding and abetting the Trustees’ breach of their fiduciary duty, Count VIII cannot be dismissed insofar as the alleged violation of Chapter 93A is based on that conduct.
I.Costs and Fees
The anti-SLAPP Act states that “[i]f the court grants such special motion to dismiss, the court shall award the moving party costs and reasonable attorneys fees, including those incurred for the special motion and any related discovery matters." G.L.c. 231, §59H (1994). Because some counts of Office One’s complaint remain viable after this Court’s decision, the defendants should submit affidavits regarding the proper allocation of attorneys fees and costs between those counts dismissed pursuant to the anti-SLAPP Act, which are recoverable, and those counts either dismissed pursuant to Rule 12(b)(6) or not dismissed. See Thomson v. Andover Bd. of Appeals, Civil No. 931716 (Essex Super. Ct. July 25, 1995), 4 Mass. L. Rptr. No. 19, 411 (Jan. 1, 1996) (Whitehead, J.) (holding that where some claims were dismissed by stipulation of the parties and others were dismissed under the antiSLAPP Act, the parties were only entitled to recover fees and costs for the claims dismissed under c. 231, §59H).
II. DEFENDANTS ERRICO AND MARCUS GOODMAN, EMMER & BROOKS’ MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)
Defendants Errico and Marcus, Goodman, Emmer & Brooks, P.C. have filed a separate motion to dismiss the claims against them, Counts III, VI, VII and VIII, pursuant to Mass.R.Civ.P. 12(b)(6). When the court considers a motion to dismiss for failure to state a claim upon which relief can be granted, all well-plead allegations in the complaint are to be taken as true, and the plaintiff is entitled to all favorable inferences to be drawn therefrom. Betting v. Citron, 372 Mass. 96, 98 (1977); General Motors Acceptance Corp. v. Abington Casualty Insurance Co., 413 Mass. 583, 584 (1992). A Rule 12(b)(6) motion should not be allowed unless it is shown beyond doubt that the plaintiff is *227 entitled to no relief under any state of facts which could be proved in support of the claim. Spinner v. Nutt, 417 Mass. 549, 550 (1994); Romano v. Sacknoff, 4 Mass.App.Ct. 862, 862 (1976).
A. Count III: Interference with Contractual Relations
The crux of Count III of the amended complaint for interference with contractual relations is that the various defendants “contacted the FDIC, as Receiver, for the sole purpose of interfering with the sale of the FDIC Units to Office One." To state a claim for tortious interference with contract, the plaintiff must show the existence of an enforceable contract which the defendants were aware of, that the defendants induced or caused a third person to break that contract with the plaintiff and that the defendants had an improper motive or used improper means to do so. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272-73 (1991); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816-17 (1990). The improper motive or means requirement presents a high threshold of proof. W. Oliver Tripp. Co. v. American Hoechst Corp., 34 Mass.App.Ct. 744, 751 (1992).
Section 111 of the Restatement (Second) of Torts provides:
One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other’s contractual relation by giving the third person (a) truthful information, or (b) honest advice within the scope of a request for the advice.
This principle applies to lawyers, since attorneys, as other advisors, need this protection for the performance of their tasks. Restatement (Second) of Torts §722, Comment c. See also Comras v. Hoffman, Civil No. 95-2531, (Suffolk Super. Ct. Oct. 25, 1996), 6 Mass. L. Rptr. No. 9, 172 (Garsh, J.) (Jan. 27, 1997) (holding that, as a matter of law, an attorney does not act improperly for purposes of an interference with contract claim in giving honest advice to a client).
In the present case, Office One and Pilgrim fail to allege that Errico and condominium counsel acted in any manner other than as an attorney or with any motive other than to protect the interests of their client, the Trustees. There is no allegation of Enrico or condominium counsel acting as a principal in committing illegal acts or as an attorney knowingly encouraging or facilitating the client’s illegality. Accordingly, because the defendants did not act improperly in attempting to halt the FDIC sale of the Units to Silver, Count III of the Amended Complaint fails to state a claim for intentional interference with contractual relations, and is to be dismissed pursuant to Rule 12(b)(6).
B. Counts VI and VII
Counts VI and VII of the complaint allege aiding and abetting and civil conspiracy, respectively, against Errico and condominium counsel. It is well established that when an attorney gives legal advice to a client or otherwise acts in good faith as an agent for his client, the attorney will not be liable in tort to third parties harmed as a result of said advice or actions. Andrews v. Tuttle-Smith Co., 191 Mass. 461, 468 (1906); Spinner v. Nutt, 417 Mass. 549, 556 (1994). Nonetheless, attorneys are not absolutely insulated from liability to nonclients and, under limited circumstances, may be liable in damages to third persons. Page v. Frazier, 388 Mass. 55, 65 (1983); Spinner v. Nutt, supra at 552; Sullivan v. Birmingham, 11 Mass.App.Ct. 359, 368 (1981). Where an attorney’s conduct extends beyond the capacity of mere advisor or agent and rises to the level of active participation in the client’s wrongdoing, the attorney will be liable in tort to third parties injured as a result. Spinner v. Nutt, supra at 556-57.
1. Aiding and Abetting
Count VI of the amended complaint alleges that Errico and condominium counsel aided and abetted the Trustees’ breach of fiduciary duty by withholding from Office One and Pilgrim notice of an adverse enforcement decision by the Cambridge Building Commissioner until after the period for filing an appeal had expired.[18] In order to establish that an attorney is liable for participating in a trustees’ breach of fiduciary duty to its beneficiaries, the plaintiff must show that the attorney knew of the breach and actively participated in it so that the attorney could not reasonably be held to have acted in good faith. Banks v. Everett Nat'l Bank, 305 Mass. 178, 182 (1940); Spinner v. Nutt, supra at 556. An allegation that the trustees acted under the legal advice of the attorneys, without more, is insufficient to give rise to liability for aiding and abetting. Andrews v. Tuttle-Smith Co., 191 Mass. 461, 468 (1906); Spinner v. Nutt, supra at 556.
Count VI of the amended complaint alleges that the Trustees had a fiduciary duty to Office One and Pilgrim to notify them of the Building Commissioner’s enforcement decision prior to the expiration of the period for an appeal, that Errico and condominium counsel were aware of this duty and that Errico, to whom the decision was addressed, actively participated in the Trustees’ breach of their duty by concealing timely notice of the decision from the plaintiffs. This constitutes an allegation of active participation by the attorneys in the wrongdoing of the client. The allegations in Count VI are thus sufficient to state a claim for purposes of a Rule 12(b)(6) motion.
2. Civil Conspiracy
Count VII alleges that Errico and condominium counsel conspired with the Trustees to deprive Office One and Pilgrim of notice of the Cambridge Building Commissioner’s enforcement decision. Under Massa *228 chusetts law, a civil conspiracy occurs where two or more persons combine to accomplish an unlawful purpose or a lawful purpose by unlawful means and those persons acting in unison exercise some peculiar power of coercion over the plaintiff they would not have had if acting independently. DesLauries v. Shea, 300 Mass. 30, 33 (1938); Fleming v. Dane, 304 Mass. 46, 50 (1939)
However, Errico and condominium counsel urge that this Court follow the numerous jurisdictions which have held that an attorney, as an agent of his principal, cannot be liable for civil conspiracy with his client when the attorney acts within the scope of the attorney’s authority. See Astarte, Inc. v. Pacific Industrial Systems, Inc., 865 F.Sup. 693, 708 (D.Colo. 1992); Worldwide Marine Trading Corp. v. Marine Transport Service, Inc., 527 F.Sup. 581, 583-86 (E.D. Pa. 1981); Fraidin v. Weitzman, 611 A.2d 1046, 1079 (Md.Ct.App.), cert. den., 617 A.2d 1055 (1992). Thus, in order for an attorney to incur liability for conspiracy, the attorney’s actions must rise beyond the attorney’s role as advisor to the level of active and knowing participation in fraudulent or other wrongful conduct. Astarte, Inc. v. Pacific Industrial Systems Inc., supra at 708; Worldwide Marine Trading Corp. v. Marine Transport Service, Inc., supra at 583-86; Fraidin v. Weitzman, supra at 1079. The plaintiff must show that the attorney was acting not just on behalf of the client but for the attorney’s own personal benefit. Fraidin v. Weitzman, supra at 1079-80. These rules are based on the important societal interest in enabling attorneys to act decisively on behalf of their clients without fear of lawsuits by third parties. Worldwide Marine Trading Corp. v. Marine Transport Service, Inc., supra at 586.
Count VII of the amended complaint alleges that Errico and condominium counsel “acted in combination” with the Trustees to withhold notice of the enforcement decision. However, Count VII fails to specifically allege that the attorneys acted beyond their role as counsel to the Trustees or actively participated in fraudulent or other wrongful conduct. Nonetheless, Count VI does allege that Errico and condominium counsel actively participated in helping the Trustees withhold notice of the Commissioner’s decision. Although these allegations are extremely thin, our rules of pleading are lenient and establish a relatively light burden for maintaining a complaint against a motion to dismiss. Gibbs Ford, Inc. v. United Truck Leasing Corp., 399 Mass. 8, 13 (1987). It is well established that doubt as to whether a particular claim is provable is not a proper basis for dismissal under Rule 12(b)(6). Id. This Court cannot say beyond doubt that there is no set of facts which would entitle Office One and Pilgrim to relief for civil conspiracy. Accordingly, Count VII should not be dismissed at this stage of the proceedings.
D. Count VIII: Violation of Chapter 93A
Finally, Count VIII alleges that the actions of Errico and condominium counsel constitute wilful and knowing violations of Chapter 93A. Given that Office One and Pilgrim have stated claims for aiding and abetting the Trustees’ breach of their fiduciary duty and for civil conspiracy, Count VIII cannot be dismissed insofar as the alleged violation of Chapter 93A is based on that conduct.
ORDER
For the foregoing reasons, it is hereby ORDERED that the special motion to dismiss of defendants Jacqueline S. Sullivan, Bryan Chegwidden, Nicholas Porcaro, Lynn H. Moore, James E. Gado and Jill Herold, Individually and as Trustees of the River Court Condominium Trust pursuant to G.L.c. 231, §59H is ALLOWED as to Counts I, III, IV, V and VII of the Amended Verified Complaint and DENIED as to Counts VI and VIII.
It is hereby ORDERED that defendants V. Douglas Errico and Marcus, Goodman, Emmer & Brooks, P.C.’s special motion to dismiss pursuant to G.L.c. 231, §59H is ALLOWED as to Count III of the Amended Verified Complaint only. Errico and Marcus, Goodman, Emmer & Brooks, P.C.’s motion to dismiss pursuant to Rule 12(b)(6) is ALLOWED as to Count III and DENIED as to Counts VI, VII and VIII.
It is further ORDERED that defendants James and Joan Stanley’s special motion to dismiss Counts II and III of the Amended Verified Complaint pursuant to G.L.c. 231, §59H is ALLOWED.
Finally, it is ORDERED that defendants Thomas and Linda Sansone’s special motion to dismiss Counts II and III of the Amended Verified Complaint pursuant to G.L.c. 231, §59H is ALLOWED.
Attorneys fees and costs are awarded pursuant to G.L.c. 231, §59H. The defendants have 30 days from the date of this Order to file their applications for same. Plaintiffs have 30 days from said filing in which to file their opposition, if any.

 The Board of Trustees is comprised of defendants Carlos M. Lopez, Jacqueline S. Sullivan, Bryan Chegwidden, Nicholas Porcaro, Lynn H. Moore, Jaimes E. Gado and Jill Herold (collectively, the Trustees).

 The acronym stands for “strategic lawsuit against public participation.” See Vittands v. Sudduth, 41 Mass.App.Ct. 515, 515 (1996); Duracraft Corp. v. Holmes Products Corp., 42 Mass.App.Ct. 572, 573, n.2 (1997).

 This decision was based on a consideration of the legislative history of the statute.

 Duracraft appears to be the only reported appellate decision involving an interpretation of the substantive provisions of G.L.c. 231, §59H. Vittands v. Sudduth, 41 Mass.App.Ct. 515 (1996), decides the issue of the effective date of said statute. See Duracraft Corp. v. Holmes Products Corp., supra at 573, n.4.

 Office One and Pilgrim argue that the Appeals Court’s decision is not so limited because in Duracraft it refused to dismiss not only the plaintiffs contract claims but also its tort claims. However, the Court noted: “The tort claims appear to depend on the validity of the contract claim. If the contract claim fails, the remaining counts may fail with it. If the contract claim survives, the parties will be required to consider whether, on the authorities cited in the text, the tort claims are entitled to survive Duracraft’s petitioning rights.” Duracraft Corp. v. Holmes Products Corp., supra at 583, n.22.

 I am concerned about the nature of the analysis, however, because in view of the Duracraft opinion, it appears that the focus is more on the legitimacy of the plaintiffs cause of action than it is on the legitimacy of the petitioning. Where both the petitioning activity and the cause of action are legitimate, as in Duracraft, the plaintiff survives the special motion to dismiss, notwithstanding the anti-SLAPP Act. Resolving this analytical enigma is a question for another day, however, because, on the present record, for the reasons stated in my decision, the plaintiffs have not alleged a valid cause of action. The plaintiffs have sought to make it appear as if legitimate petitioning constitutes some type of illegality and, on this record, it does not.

 This is critical because the statute defines the right of petition as involving written or oral statements “made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding . . .”

 See FDIC v. La Ramba Shopping Center, Inc., 791 F.2d 211, 218 (1st Cir. 1986).

 Moreover, by statute, the FDIC has the status of a federal agency for purposes of commencing suit under 28 U.S.C. §1345. 12 U.S.C. § 1819(b)(1).

 The FDIC, like any government agency, has discretion as to whom it sells to. Further, the FDIC is governed by statute with the authority to take into consideration the typical factors considered by government, see 12 U.S.C. §1821(d)(13)(E). Clearly, it is a governmental agency that can be petitioned, as has been done in this case.

 Because a plaintiff must show both sham petitioning activity and actual injury in order to defeat a special motion to dismiss, it is not necessary to reach the question of whether Moore’s actions caused Office One and Pilgrim actual injury.

 There is evidence before this Court that Pilgrim does in fact provide adult-oriented 900 number telephone services. Such evidence includes an affidavit by Thomas Sansone stating that after paying $1 to open an account with Pilgrim Telephone, he listened to a menu of services, including “The Sex Line,” ‘The Bondage and Discipline Line” and “Erotica.” In addition, various newspaper articles submitted to the Court state that Pilgrim operates a telephone talk line called “Intimate Connections,” that a suit is pending against Pilgrim by the Minnesota District Attorney to force Pilgrim to install a system with features to allow consumers to block 900 number calls, and that Pilgrim settled a similar lawsuit against it in the U.S. District Court in Pennsylvania by agreeing to install a two digit code system into its "dial-a-porn” 800 number to prevent people from receiving unsolicited calls.
Distaste for the nature of Pilgrim’s business would be an impermissible basis on which the FDIC could act and thus would not be a proper basis for an anti-SLAPP motion. Under the First Amendment the proposed owner is entitled to do business in telephone sex lines and the government may not predicate its decision on the content of these calls. See Boston Phoenix, Inc. v. N.E. Tel. & Tel. Co., Civil No. 950059 (Middlesex Super. Ct. Aug. 12, 1996), 5 Mass. L. Rptr. No. 25, 547 (Sept. 23, 1996) (Brassard, J.). Under the anti-SLAPP statute, a special motion to dismiss is only available to those conducting legitimate rights of petition. There would be no legitimate basis for requesting that the FDIC not contract with Pilgrim because it operates a telephone sex business. To the extent that any such issue might have motivated these defendants, that is not the basis on which I am determining that their right of petition is legitimate. Indeed, if that were the only basis, the statute would be inapplicable. Given the other legitimate bases, the statute is applicable.

 Count II is directed only against the Stanleys, the Sansones and “other individuals comprising the Committee to Protect River Court whose identities are presently unknown to Plaintiffs.”

 Because Count III does not name specific defendants, the parties have assumed that it states a claim against all named defendants.

 To the extent that the plaintiffs have objections to the Parking Regulations, suit does not lie against the unit owners or the Trustees who cannot set aside the Regulations or refuse to enforce them. The unit owners or Trustees are not subject to suit merely because they are seeking to take advantage of the Regulations, which would seem to be within their constitutional right to petition.

 Office One and Pilgrim are not claiming that Errico and condominium counsel had a fiduciary duty directly to the unit owners. It is clear that the Trust itself is the client here, not the individual owners. The courts have repeatedly refused to find that a trustee’s attorney owes a duty not only to the trustee but also to the beneficiaries, since this additional duty would result in conflicting loyalties and impermissibly interfere with the attorney’s task of advising the trustee. See Spinner v. Nutt, supra at 553.