Cowin, J.
This matter concerns the proper application of the Anti-SLAPP Act, G.L.c. 231, §59H. On two prior occasions, faced with a dearth of appellate precedent interpreting the Act and divergent views within the Superior Court concerning its scope, this Court attempted to apply the statutory language to the facts of this case in a manner consistent with both the legislative mandate and justice between the parties.* Thereafter, the Supreme Judicial Court for the first time elucidated the proper scope of the Anti-SLAPP Act in a long awaited decision, Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156 (1998).
The Supreme Judicial Court emphasized that the intended purpose of the Anti-SLAPP statute was not to immunize from litigation all suits touching upon the right to petition, but rather to provide a narrow remedy for the specific mischief embodied in the archetypical “SLAPP" suit:
generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so . . . [such] suit[s] target people for “reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations.”
Duracraft Corp. v. Holmes Products Corp., supra at 163. The Court further noted that by focusing solely on the movant’s exercise of the right of petition, the plain language of G.L.c. 231, §59H mandates dismissal of otherwise valid legal claims, thus implicating the nonmovant’s constitutionally protected right to petition a court for redress of its grievance. Id. at 160, 165-66. This not only threatens the constitutionality of the Anti-SLAPP Act but has resulted in the dismissal of many nonfrivolous claims which, although within the apparent letter of the statute, are not within its spirit. Id. at 166-67.
Accordingly, in order to avoid the unconstitutionality of G.L.c. 231, §59H and to prevent the dismissal of many nonfrivolous claims that are beyond the mischief intended to be reached by the statute, the Supreme Judicial Court held that the statutory term “based on” is properly interpreted to exclude motions brought: against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated. Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 167 (1998). Thus, amovant who seeks to have a claim dismissed under the AntiSLAPP Act must make a threshold showing, through *181 the pleadings and affidavits, that the claims against it are based on petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities. Id. Once the movant makes this showing, the burden then shifts to the nonmoving party, as provided in the statute, to show that the movant’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party’s acts caused actual injury to the nonmovant. Id.
Since the Duracrqft decision has circumscribed the application of the Anti-SLAPP Act to a significant degree, plaintiffs Office One and Pilgrim now ask this Court to reconsider its prior decisions dismissing the majority of their complaint pursuant to G.L.c. 231, §59H. The plaintiffs contend that under the more stringent standard for dismissal established by the Supreme Judicial Court, their claims against the various defendants should not have been dismissed.
COUNT I: INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS
Count I of the plaintiffs’ amended complaint states a claim against defendant Moore for interference witn advantageous business relations with the FDIC with respect to the purchase of the FDIC Units in River Park.[2] The complaint alleges that Silver had timely submitted the best and highest offer of $550,000, that Moore communicated with the FDIC with the intent to deprive Silver of the purchase of the units and persuaded it to re-open the bidding, and that Silver’s second bid of $650,000 was accepted by the FDIC as the best and highest offer. Moore, as the special movant, bears the burden of showing that this claim is based solely on her petitioning activities and has no substantial basis other than or in addition to the petitioning activities implicated. Duracrqft v. Holmes Products Corp., supra at 167-68. Areview of the second amended complaint reveals that the only conduct by Moore alleged to constitute interference with advantageous relations is her communication with the FDIC. The plaintiffs do not allege that she committed any wrongful act other than her petitioning activity. Thus, Moore has made the necessary threshold showing that Count I is indeed based on her petitioning of the FDIC alone, and that said Count lacks a substantial basis other than or in addition to said activity. Accordingly, upon reconsideration, this Court affirms its prior dismissal of Count I pursuant to G.L.c. 231, 59H.
COUNT II: SLANDER & DEFAMATION
Count II of the amended complaint alleges that after the FDIC agreed to sell Silver the units, the Sansones and the Stanleys, individual unit owners, made defamatory statements to other unit owners about plaintiff Pilgrim Telephone to the effect that Pilgrim was a sleazy operation. Count II further claims that the Sansones and the Stanleys posted signs and distributed leaflets stating their concerns about Pilgrim’s presence at River Court and urging other unit owners to contact their representatives to oppose the sale of the FDIC units to Silver.
The Sansones and the Stanleys bear the burden of making a threshold showing that this claim is based solely on their petitioning activities and has no substantial basis other than or in addition to the petitioning activities implicated. Duracraft v. Holmes Products Corp., supra at 167-68. They have demonstrated that each statement forming the basis of Count II was made in an attempt to enlist public participation in the defendants’ effort to affect the FDIC’s decision concerning the sale of its condo units. None of the statements alleged in the amended complaint were made in any other context. Thus, the defendants have shown that Count II is based on their petitioning activity alone and lacks any other basis.
Further, a review of the complaint does not suggest that the slander claim against these defendants has merit or was motivated by the need to protect a cognizable legal right. For example, the statements in the leaflets and other materials circulated by the defendants are largely opinion as to the effect of Pilgrim’s occupancy in River Court on property values and convenience to residents. The memo written by the Stanleys refers only to a “24 hour telecommunication business” and opines that the arrival of such a business could result in lower real estate values, increased noise and traffic, reduced security and increased condo fees. The memo then urges fellow residents to contact the FDIC, Congressman Joseph Kennedy and Senator John Kerry, and to sign a petition at the front desk of River Court.
The “Urgent Warning” notice posted by the Sansones states that Pilgrim’s telecommunications business offers “services [which] aré essentially phone sex lines” and that Pilgrim is “of dubious character” and “poses a significant threat to our properly values .. . possibly even our personal and physical security.” The evidence submitted to this Court in connection with the original special motion to dismiss suggests a factual basis for the assertion concerning adult telephone services. Moreover, the statements concerning Pilgrim’s dubious character and threat to property values are mere statements of opinion based on disclosed and nondefamatoiy facts which are not actionable. See Lyons v. Globe Newspaper Co., 415 Mass. 258, 262 (1993).
Thus, the defendants have satisfied this Court that Count II of the amended complaint has no substantial basis other than an attempt to chill the Stanleys and Sansones’ exercise of their right to enlist the participation of fellow unit owners in opposing Silver’s purchase of the FDIC units. See Atwood v. MacDonald, Civil Action No. 96-713 (Barnstable, April 15, 1998) (Dolan, J.) (dismissing a defamation claim under c. 231, §59H where the claim was not meritorious and had no substantial basis other than or in addition to petitioning activity). Indeed, Count II is an example of *182 what the SJC in its recent opinion called the “archetypical SLAPP suit,” one which targets common citizens for:
reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations.
Duracraft Corp. v. Holmes Products Corp., supra at 161. Accordingly, this Court affirms its prior ruling that Count II of the amended complaint be dismissed pursuant to G.L.c. 231, §59H.
COUNT III. INTERFERENCE WITH CONTRACTUAL RELATIONS
Count III of the amended complaint alleges that the FDIC was prepared to sell Silver its units on July 29, 1996 pursuant to a purchase and sale agreement but that the defendants made slanderous statements to the FDIC to persuade it not to honor its contractual obligations to Silver. With respect to the Sansones, Count III states that the statements at issue are those identified in Count II of the complaint. As discussed supra, such statements constitute petitioning activity and are not the basis of a cognizable slander action. With respect to the Stanleys, Errico and the Trustees, Count III alleges only that they “contacted the FDIC.” The “Notice to Unit Owners” distributed by the Trustees and attached as an exhibit to,the amended complaint simply advised residents that Pilgrim would be purchasing the FDIC units and that Bagelicious and Vanity Dry Cleaners would no longer be operating in the building. The notice further stated that Pilgrim would be operating 24 hours a day.
The complaint alleges no other conduct by any of the defendants constituting an interference with contract. The defendants therefore have met their burden of making a threshold, showing through the pleadings and affidavits that Count III is based solely on their petitioning activity and has no substantial basis other than or in addition to said activity. Accordingly, this Court affirms its prior ruling that Count III of the amended complaint be dismissed pursuant to G.L.c. 231, §59H.
COUNT IV: DECLARATORY JUDGMENT
Count IV of the amended complaint alleges that the Trustees improperly adopted Parking Restrictions allocating the 15 commercial parking spaces at River Court in order to harm the plaintiffs, and seeks a declaratory judgment as to the proper allocation of said parking spaces.[3] The Trustees bear the burden of showing that this claim is based solely on their petitioning activities and has no substantial basis other than or in addition to said activities. Duracraft v. Holmes Products Corp., supra at 167-68. This they have failed to do, either by affidavit or reference to the pleadings. Although the dispute in Count IV originated with the Cambridge Building Inspector’s enforcement of a special permit limiting commercial parking spaces at River Court to a total of 15, the crux of Count IV concerns the Trustees’ subsequent allocation of those 15 spaces among commercial unit owners, conduct “other than” petitioning activity. The Parking Regulations adopted by the Trustees allocate 3 spaces to Unit 101, 4 spaces to Unit 102, 3 spaces to Unit 121,[4] and the remaining 5 spaces to Units 118 and 120, which are owned by Office One. Commercial Units 1A, IB and 1C, also owned by Office One, were allocated no parking spaces.
Office One complains that under this allocation, units comprising only 30% of the total commercial space in River Court were given 67% of the available commercial parking, while Office One, which owns units comprising 70% of the commercial space, was given only 33% of the available parking. Further, Office One contends that in accordance with the original permit issued to River Court, it is entitled to all 15 parking spaces as the owner of Units 1A, IB and 1C, the only three commercial units shown in the original development plan.[5]
Count IV sets forth a legitimate dispute between the plaintiffs and Trustees concerning the validity and proper application of the Parking Regulations. As a unit owner at River Court, Office One is entitled to fair treatment by the Trustees on all issues affecting its property interests in the condominium, including the adoption of the Parking Regulations, and to have any claim of unfair treatment adjudicated in court. The Parking Regulations are thus analogous to the covenant not to compete in Duracrafi in that they implicate a contractual and/or fiduciary basis for a cause of action, aside from the Trustees’ petitioning activity. The Trustees have failed to make a threshold showing that Count IV has no substantial basis other than or in addition to their petitioning activities, and the plaintiffs thus must be allowed to pursue their legitimate legal claim. See Coulon v. Jensen, Land Court Civil No. 236985 (Nantucket April 8, 1998) (denying a special motion to dismiss on the ground that the complaint alleged a legitimate title dispute apart from petitioning activity). Accordingly, this Court vacates its prior dismissal of Count IV and orders that the special motion to dismiss Count IV be DENIED.
COUNT V: BREACH OF FIDUCIARY DUTY
Count V of the amended complaint alleges that the Trustees owed the plaintiffs a fiduciary duty as unit owners and breached that duty by its adoption and enforcement of the Parking Regulations: by attempting to revoke plaintiffs’ certificate of occupancy for certain units; by withholding notice of a decision of the Cambridge Building Inspector; by denying Pilgrim access to condominium utility and storage closets required for the operation of its business; and by demanding that plaintiffs’ employees not use condominium health facilities.
The Trustees bear the burden of showing that this claim is based solely on their petitioning activities and *183 has no substantial basis other than or in addition to said activities. Duracraft v. Holmes Products Corp., supra at 167-68. Initially, it was apparent at oral argument that any claim based on the alleged withholding of the Building Inspector’s decision is now moot. The Building Inspector has informed the parties that the document at issue was not, in fact, a final decision for purposes of the relevant appeal period and he has since issued a final decision.
The remainder of Count V contains allegations concerning the fiduciary relationship between the condominium trustees and an individual unit owner. Under the Supreme Judicial Court decision in Duracraft, this type of preexisting legal relationship may limit the applicability of the Anti-SLAPP Act to petitioning activity. See Duracraft v. Holmes Products Corp., supra at 166.
Count V alleges that the Trustees breached their fiduciary duty to the plaintiffs by depriving them of their contractual rights as unit owners, and sets forth several nonpetitioning acts as the basis of the alleged breach. Such allegations constitute a substantia] basis other than petitioning activity for maintenance of Count V. Accordingly, This Court vacates its prior dismissal of Count V and orders that the special motion to dismiss be DENIED as to Count V except for those allegations in subsection iv of paragraph 80.
COUNTS VI and VII: AIDING AND ABETTING & CIVIL CONSPIRACY
Count VI of the amended complaint alleges that Enrico and Condominium counsel aided and abetted the Trustees’ breach of fiduciary duty by withholding from the plaintiffs notice of the adverse enforcement decision by the Cambridge Building Inspector. Count VII further alleges that the Trustees, Errico and Condominium counsel acted in combination to conceal said decision from the plaintiffs. As discussed supra, a cause of action premised on such conduct is now moot insofar as the plaintiffs could not have been prejudiced in an appeal by the withholding of what was not a final decision triggering the commencement of the appeals period. Accordingly, this Court affirms its prior ruling that Counts VI and VII of the amended complaint be dismissed.
COUNT VIII: CHAPTER 93A
Finally, Count VIII of the amended complaint alleges simply that the defendants have committed unfair and deceptive practices causing the plaintiffs to suffer the loss of money and property.[6] The plaintiffs’ Chapter 93A claim is predicated on the earlier interference with contract, breach of fiduciary duly and civil conspiracy claims. Insofar as the defendants have shown that the underlying claim for interference with contract is based solely on their petitioning activity and has no substantial basis other than or in addition to said activity, the plaintiffs’ Chapter 93A claim must also be dismissed under G.L.c. 231, §59H. As the civil conspiracy claim has been rendered moot, the Chapter 93A claim based upon it is also moot. However, to the extent that the plaintiffs’ claim for breach of fiduciary duty survives the special motion to dismiss, so does their Chapter 93A claim. Accordingly, this Court vacates its earlier ruling dismissing Count VIII of the amended complaint pursuant to G.L.c. 231, §59H and orders that the special motion to dismiss be ALLOWED as to Count VIII except insofar as it is premised on a breach of fiduciary duty.[7]
ORDER
For the foregoing reasons, upon reconsideration and pursuant to the decision in Duracraft v. Holmes Products Corp., 427 Mass. 156 (1998), it is hereby ORDERED that this Court’s July 15, 1997 Order on the Defendants’ Special Motion to Dismiss (not on the Rule 12(b)(6) motion), as supplemented by this Court’s September 30, 1997 Order on the Parties’ Motions for Reconsideration and this Court’s September 30, 1997 Order on the Trustees’ Motion for Clarification, be VACATED insofar as those orders dismissed Counts IV, V and VIII of the amended complaint but those Orders are otherwise REAFFIRMED.
It is further ORDERED that the special motion to dismiss be DENIED in regard to Count IV; DENIED in regard to Count V (except for those allegations in subsection iv of paragraph 80); and ALLOWED in regard to Count VIII (except to the extent Count VIII is based on a breach of fiduciary duty).

Editor’s Note: For other opinions in this matter see 7 Mass. L. Rptr. 219, 7 Mass. L. Rptr. 585, 7 Mass. L. Rptr. 588, 7 Mass. L. Rptr. 589, and 8 Mass. L. Rptr. 118.

The basic facts and the descriptions of the parties are not set forth herein as they have been described in detail in this Court’s Consolidated Memorandum and Order on Defendants’ Special Motion to Dismiss [7 Mass. L. Rptr. No. 10, 219 (September 15, 1997)].

It appears that prior to the Building Inspector’s enforcement of the special permit, between 30 and 50 spaces at River Court were used by commercial tenants, with Office One using around 26 spaces.

In support of its argument that the Trustees acted unfairly, Office One notes that Unit 121, the smallest commercial unit in square feet, is owned by Trustee Lynn Moore.

While the plaintiffs’ declaratory judgment claim could be deemed a sham intended merely to harass the Trustees if the difference between the parking spaces received and those sought were merely de minimis, this Court concludes that a claim for an additional 10 parking spaces is material enough that Count IV is a legitimate attempt to validate the plaintiffs’ alleged parking rights through a declaratory judgment count.

Whether the transactions at issue involve trade or commerce within the meaning of Chapter 93A is a question for another day. The Supreme Judicial Court has made clear that a special motion to dismiss under G.L.c. 231, §59H is designed to foreclose a consideration of the merits of a claim. See Duracraft Corp. v. Holmes Products Corp., supra at 166, n. 17.

However, it should be noted that Count VIII as to Errico and condominium counsel was dismissed by this Court pursuant to Rule 12(b)(6).